The Honorable, the Judge of the United States Court of Appeals for the Fourth Circuit.  We're ready for oral argument in United States v. Parker. Mr. Kendrick. Thank you, Your Honors. May it please the Court. I'm Josh Kendrick here on behalf of the appellants, Jack Parker, who is present, and Mr. Doug Taylor, who is not present. There are three issues that we've presented for the Court. I want to start with the Brady violation, Your Honors. I'm going to ask this Court to finish what it started in the United States v. Barkow opinion several years ago. A clear and unequivocal message that the standard in the Fourth Circuit is that there will be no tolerance for discovery abuses. As the Court said in Barkow, they violate the Constitution, but probably more important from a practical matter is they erode faith in the justice system. That's what happened in this case, Your Honors. There are three things to consider when determining whether a Brady violation occurred. I'm going to tailor them to the facts of this case so that we narrow our focus. The first question is, was the evidence that was withheld impeachment evidence? Second, did the prosecution, in fact, withhold it? And then third, was it material? I think we can dispense with the first two questions. On the Monday morning after this trial ended. Whether they withheld it, because they say that you already had that information somehow. Is that accurate or not? It's accurate. They said that. It is inaccurate. We had the information. And the District Court ruled in our favor on that factual finding. But, of course, it's still up for play here in the Court. This is what happened. Mr. Staples was a witness in this trial who had, we ultimately find out, is under investigation by the SEC out of Utah for federal fraud. Our clients had some suspicion that he was up to something. And the government has put in both, I think, the briefing and the lower court motions, where they got that information from, that there is a recorded phone call between Mr. Staples. Right, but the conversation that the government's relying on is the conversation if they investigate him. Is it not? Correct. And that's incredibly important here because I think it compounds the problem that there was some suspicion that he had involved in some type of fraudulent behavior, but they had no way of knowing it. And if you look at sort of the back and forth in the lower court when we were arguing this motion, our position was, sure, we knew there was something going on, but we never could tell what it was. We couldn't prove it. And this was of such a nature that there was no way for us to diligently and independently find out that he's under this federal investigation that is going to result in imminent action. So I think the fact that they didn't tell us about it is far more important. And this is why. Because on Friday afternoon, which I assume is the latest time from the email exchange that they were told by Mr. Staples, we may have been able to figure out what to do with it. That's what seems to be the important question in this court. When we're talking about whether there is a material violation, what could we do with it? And that was going to be part of my question. Help me with materiality if we do not view Tammy Parker as the fifth for purposes of the conspiracy. So let's take her out. If she's out of the equation, is his testimony material since the most significant thing he was going to testify to was that she served as a bookkeeper of sorts for the gambling operation? Less significant. And he does testify to this. He simply authenticates the recording. But one of the issues with that recording is, and this court has heard numerous cases where there's a recorded statement, is that we weren't able to question him on the context or the motivation. That was not a controlled recording. In other words, he wasn't sent by federal agents to record Brett Parker. He did it on his own. So that involves some of the evidence for layoffs. And I'm going to address your question. I want to address it sort of in two parts. Right. His testimony would have gone to two things. Correct. Tammy's engagement and some testimony about layoff in which Brett explained layoff betting. And I think that's important because layoff betting is part of maybe the next issue, but intertwined with this issue becomes a very critical part of our argument as to why this was not the overwhelming evidence that normally kills a Brady claim. But does the explanation, and I'm sorry to belabor this, the explanation regarding layoff betting, would that have been material to the finding of the fifth, of a fifth person for purposes of the conspiracy? The explanation would not have been. The fact that Brett in his own words in the recording starts to explain it, and then they interpret it as though he is saying he has the opportunity to lay off, which we get into a second part with sufficiency of the evidence. But let me go back to where I think there's an important issue here about Tammy Parker. Under Nicolau, which is a case this court decided that allows for a non-unanimous verdict in a gambling case, I think you change the argument when there's several theories to support conviction by the government. There are times when we are trying to hit a moving target because we're not exactly sure why it was the jury decided someone was guilty, and we don't get into their heads. But in this case, when we have Nicolau, the jury is allowed to find four different theories, three different theories, and then convict our clients. That was a question that came out, and they said, do we have to all agree on the fifth person? The court said under Nicolau it's dead on point for circuit case law. You actually don't. I knew that case was out there, which is why I sat down reluctantly and didn't have much of an argument to make. Here's why that changes the analysis in a case like this. It only matters if one person might have thought that Ms. Parker was the fifth person involved in this, if only one jury member thought that, as opposed to all 12. So we can look at the materiality as to each theory because the jury was not required to select from each theory. And in fact, just the opposite. The jury was allowed to pick a mishmash of the theories. If some of the people thought Layoff, some thought Line Supply, some thought Tammy Parker, then that was okay under Nicolau. And I think that's important for your analysis because it adds to the materiality that Tammy Parker was only linked to this by Ben Staple's testimony. That's important because there's two things this court looks at in materiality. Number one, did he establish some essential link? Was he the only link? And as to Ms. Parker as the fifth person, that was the only person that brought her in as the bookkeeping role. So you're saying if one juror believed that Tammy was the fifth, then the testimony becomes material for Brady. Correct. Even if the Layoff, the other people were stronger candidates. Correct, because 11 people could have believed the Layoff and one person could have not believed the Layoff. And under Nicolau and under the district court's answer to the jury's question, if that final person says, I still don't believe about the Layoff, you know what, I believe Ms. Parker was the fifth person, they're allowed to convict. Does the sufficiency standard hurt you at all in that regard? I think it helps me in that regard. And I think it helps me because instead of saying, was there overwhelming evidence as to one issue, was there overwhelming evidence in a very specific framework, it's to all of it. Because when the government presents multiple theories in a case where they're allowed to win on multiple theories, then if the sufficiency of the evidence fails on any one part, then we should win. And again, that's sort of the double-edged sword of Nicolau, that it may hurt, but it may also put a different standard when we get to this court as to how we argue it. And I think that, again, because Mr. Staples is the only person who links Ms. Parker's book... Well, there was some evidence, though, that she was accepting when her husband wasn't home, she answered the door, she might take some envelopes containing betting money, wasn't there? There was, and I think it was weak enough that it got discounted by the government, by everybody. I don't think it ever came back up. It's not actually one of the issues they argue on appeal. Here I'm asking you, though, because you said there was no other evidence. There was evidence, and I apologize to the extent that I misstated that. There was no credible evidence. There was no evidence that makes reasonable sense, because there was no way to determine when she had took those envelopes. The person who said that was asked, when was this? As you know, in a federal gambling case, the timing of the matter becomes very important, because there's an issue to this 30-day period. So when something happened, especially in a small operation, you have to understand that most of what we are arguing about involved Mr. Brett Parker and his dealings, whereas I represent Mr. Jack Parker and now Mr. Doug Taylor, who were separated from Mr. Brett Parker at least until the government starts trying to build these connections. But in the context of a sufficiency challenge, as you know, if there are any slightly squirrely pieces, every inference gets drawn in favor of the government. So why would we not be able to infer that Staples' testimony was unnecessary to the jury verdict, as the district court actually found? Because it's every reasonable inference, and you have to look at the fact that there is clearly multiple theories being argued by the government, and then there's a jury question that reflects that they're not able to agree on a particular theory. So now we have a situation where you have this one witness who is the sole witness for that one theory. Did you say there's a jury question that reflects they weren't able to agree? The jury – I'm sorry, I may have – There was, and to the extent – I would apologize if it's not on the record. I think we talked about it in our briefs, but the jury asked, do we all have to decide the same fifth person was here in this 30-day period? And that's where we get this idea that if there's any hint of disagreement, or even I think if it's allowed, then the sufficiency of the evidence analysis changes. Because if Mr. Staples was materialist to only one of those theories, then now you get into this how essential he was to the case, and you go to the second question, was this the only thing to impeach him on, and it was. We didn't ask him any questions because we didn't have any questions to ask. Let me flip it. Is it your argument that Staples' testimony was necessary to the jury verdict? It was. Are you saying it was necessary, though, only if Tammy Parker was the fifth person of one of the jurors? You agree on that, right? Right, and I don't think we can answer that question because the jury didn't have to answer that question. Because we don't know which theory the jury chose, which I don't know of another situation in a criminal case where we have that type of distinct. But you agree, in order to matter, it would have had to have been predicated on at least one juror thinking Tammy Parker was the fifth person. Absolutely. And I think that alone in the context of a Brady violation makes it material because when we're looking at whether it undermines our confidence, remember it's not more likely than not. In other words, if this court says, we don't really think that it would have changed anything, that's not the question. The question is, under United States v. Agurz, does the omitted evidence create some reasonable doubt, or could it have? And I think that it's fair to say that even though the language hasn't been clear, that that's the standard this court ought to look at. Well, materiality is a little more restrictive under Brady, is it not? I don't think it's a whole lot more restrictive. I mean, I think that the question here is, does this evidence undermine our confidence? Right. I think the language of undermining our confidence is not far off from the idea of firmly convinced. I operate either at advantage or disadvantage in that I practice in state and federal courts, so I'm used to defining reasonable doubt in one court and disallowed from defining it in the other court. But that's typically what it is. Are you convinced of what happened? Is there a reason to doubt a result? And in this case, you've got this idea that Mr. Staples is testifying on behalf of the United States government at the exact same time he is under investigation by the United States government. The fraud's not relevant to some degree. The investigation is what's relative, the bias, the motivation. Don't our cases, though, say that there has to be a reasonable probability of a different result had the information been disclosed? And the answer to that is yes. That is our standard. I agree. And so could you walk us through the facts of your case to show us why you met that standard? Certainly. And I'm out of time, but if I can answer that question, I'll tell you. So let me start with the fact that the reasonable probability, again, it's less than a more likely than not. It's less than a preponderant standard. I just have to show some reason for your confidence to be undermined in the result. This case is a hotly contested case. We are fighting on several different fronts because I have a client and then now an appellate two clients that are saying, we actually never were joined with this other two-person operation. So there's no doubt that if that isn't the case, you never get to five. There's no doubt that even if our clients are laying off or doing anything like Mr. Parker, they don't get to the five. And there's no evidence of that. So we're looking now at this second Brett Parker organization and what they're doing. And to the extent that Tammy is in this bookkeeping role, we fought that the whole way through this trial from both pre-trial into, you know, to verdict. We fought Tammy and Parker's involvement. Ben Staples comes up and testifies about her role as a bookkeeper, testifies about her role as a tax person, which we don't think there's a sufficiency of the evidence argument on that, but he's the only person that puts her in this situation. So was Staples the witness who said that she was at home and accepted money? He was not that witness. And also she was clearly responsible for the housekeeping records, including rather bizarrely to me, paying taxes on the gambling proceeds. Your Honor, that's not entirely true. She's looking at her household budget and one of the items in a- She's factoring in the gambling proceeds. As a projection. And that goes to the other issue that I won't have time to argue on this side of the argument. But, you know, number one, she's factoring in what may or may not happen as she puts a projection for her whole- But isn't the significance, though, that she, that the gambling, the illegal gambling proceeds were a recognized piece of her budget projections and meticulous recordkeeping? It's as to knowledge, Your Honor, but not participation, which is required under the statute. And I argued in the district court exactly this term, that this is not meticulous recordkeeping. Those journal notes are in the joint appendix. This is a scrawled out, you know, this might happen, this might happen, and then we have nothing else. I don't know if that was beginning and end. It's too exact of a- or too even of a number to have been some recording problem or recording issue. And the taxes I don't think are relevant either. Somebody has to file the family's taxes. You know, one of the unique things about this case was that they were paying taxes on both monthly gross wager taxes for a tax stamp, which gets us nowhere, at least under case law, but they were doing what they were supposed to do to comply with taxes. Otherwise, we would have probably had a very different criminal trial. So that's no different than, you know, she gets the information from her husband and she puts it on the form. I don't think he's required to come in and do a separate form, especially when they're filing jointly. I don't think that adds- What about keeping the records? She never kept the records, and there's no evidence of that. What happened is he- I don't know that there was really any- there was some mention of records, but she certainly was not the record keeper. As a matter of fact, you have sort of a one-part situation here because you've got this projection maybe, but you never see what happens on the other end. But you're challenging the entries in her notes. We challenge those as hearsay. So I guess, you know, from a standpoint of sufficiency, we challenge them because they don't show participation. There's sort of a two-step challenge to them. Number one, we think they were inadmissible because their accuracy is what made them relevant, because it would have shown participation as opposed to knowledge. But then from a second standpoint, we think that even if you have that, the act of writing that down either as the budget or the tax recording issue does not by itself show participation in this under the statute as it's contemplated. I'm sorry, I'm way over time. I have- You have- I'm sorry. Well, I was going to ask, there are two other issues we raised that we didn't entirely get into, so if I could address those on rebuttal so they won't be considered- That would be fine. Thank you. Thank you, Your Honor. Mr. Richardson? Thank you, Your Honor. Jay Richardson for the District of South Carolina. It's a pleasure to be before you. What the appellant here is asking is this court to re-evaluate the facts found by Judge Curry after she sat through the extensive trial and participated in the proceedings below. And those fact-bound determinations that she made were, first, that there was sufficient evidence, second, that the information about Mr. Staples was not material, and third, that the hearsay objection, that those notes were not offered for the truth of the assertions on them- Well, you agree that the key to this case on appeal is the materiality of Staples' testimony? Absolutely. I certainly think that is the central issue. It is the one that I anticipated this court would be most interested in. And it's the one where we believe that Judge Curry, in particular at page 852 of the joint appendix, where she issues an exhaustive opinion, and 852 really is the materiality portion of that opinion, where she, having sat through this entire trial, she then evaluates, what would the result be? And the standard, Judge Keenan, as you point out, is, is it a reasonable probability? And that's the sort of factual finding that Judge Curry made in determining that it was not a reasonable probability, having seen the case, having gone through the process, having understood most centrally- But this is a legal issue, we decide on appeal. You agree? I think it's a little bit complicated, Judge Keenan. I think that what the court has said, and this is most particular in the United States v. King decision, which is a 2011 Fourth Circuit decision addressing a Brady issue, what the court says is, we review the district court's legal conclusions de novo, but its findings are fact for clear error. Which I think is the correct way of thinking about it in this context, that, yes, is there a Brady violation? That is the legal question. Mr. Richardson, how do you get beyond the fact that your prosecution team knew that Mr. Staples was being investigated? You knew it the Friday before the trial, and all you had to do was pick up the phone and ask about it. You knew he was being investigated for fraud on the elderly, which is like throwing a match on gasoline. And yet you elect, your office elected, to do nothing about it. Until the day after the verdict, which is suspect timing. There's no doubt the timing is quite suspect, but it is coincidental. There's nothing in the record that suggests that it is not the most unbelievable coincidence that I'm familiar with, but it is clearly coincidental. And to your point, Judge Keenan, we certainly wish that we had. I don't believe that we were obligated to do so. It doesn't help you a whole lot now, though, does it? It does not, but I felt like in responding to your question, I do want to tell the court we wish that we had provided that information. We don't think that we were required to do so. How big is this office? How big is the office in? U.S. Attorney's Office in what? In Columbia? Yeah. There are two floors. I believe there are about 25 lawyers. Okay, so you're not talking about thousands of people. Certainly not thousands of people, no, Your Honor. And so you knew, I mean, the civil division of your office knew as of Tuesday, was it not? I believe the evidence. That, in fact, a complaint had been filed. They received a complaint from the SEC on Tuesday. Right, so the trial was still in progress. The jury hadn't returned. You knew that you had a putative fraudster who was a witness in your case, and yet you still cruised on and let the case go to verdict. How do you justify that? Well, Your Honor, from a factual matter, the civil division knew that Utah had provided a complaint on a Ben Staples. The prosecutors did not know that information. Yeah, but you knew Staples had talked to you as of the past Friday. Absolutely. We knew that there was the existence of an investigation, just as previously the FBI had investigated him, the South Carolina Attorney General's Office had investigated him, and the Atlanta's Office had investigated him and closed those investigations. But we did know that information. But you knew that Mr. Staples said he was currently being investigated, and it was like hear no evil, see no evil. You guys just rolled along with it. Well, we certainly wish that we had provided that information, but I think the question that we are here to address is whether it was material. I don't dispute, Your Honor. We wish that we had provided that information. Well, Mr. Kendrick says that it's material because you have to find the fifth person, and that fifth person in some jurors' mind could have been Tammy Parker, and Staples' testimony was a key piece of the evidence that connected Tammy Parker to the conspiracy. In two parts. I think first, Your Honor, I think the mere possibility that they could have believed it was Tammy Parker, that possibility is not sufficient. We were looking for a reasonable probability. Well, it only took one person out of the whole jury who found her to be the fifth person. That is correct. It is whether there's a reasonable probability. Right, but why are we required to – we are not required to speculate, certainly. We weren't in the jury room. We're not in the jury box. What bothers me is the integrity of the system here. There's really no way, as you say or as you suggest, to really justify what you did, what your office did. And so when we look at the materiality, aren't we really required to look at it very expansively if the violation is egregious? First, Your Honor, I don't believe the violation is egregious. I think what the government is – Okay, let's say some of us disagree with you. What evidentiary lens do we look at this violation through?  But practically, walk us through how you would have us look at it. I think first and foremost, you would look at the district court's decision because she evaluated the evidence, having sat through it and determined, based on her review, that the witness here, Mr. Staples, was of insignificant import. And I think that's true both with respect to Tammy Parker as well as respect to the layoff bettors. Are you a trial lawyer as well as an appellate lawyer? I am, Your Honor. Okay. So you know if you put a fraudster up on the stand and you're vouching for his credibility, that kind of taints the whole case. Well, it can certainly taint the whole case, don't you? I don't think in this case, Your Honor, the witnesses that the government put up, as the government often does, are often not particularly nice people. The witnesses we put up were all gamblers. They were all individuals who were like Mr. Ben and Haley. But they were nickel and dime gamblers relative to the world of gambling, weren't they? Well, Mr. Ben and Haley— Look at the sentences that these defendants got. These weren't big operators. I think it depends on how you define big, Your Honor. I think for our community, they were big operators. So how is there a reasonable probability? I think I probably distracted you. Sorry. I think what we look at is the district court's evaluation. And what Judge Curry found, having sat through the trial, is that this was a witness who had limited import. I mean, he served primarily to authenticate Tammy's handwriting. No, but also to provide evidentiary support for the proposition that she was intimately involved. She was a participant in the operation by being a record keeper, a bookkeeper. Well, I think, Your Honor, reading Mr. Staple's testimony, I don't think he said those things. I think what he said was, this is her handwriting. She prepared the taxes. Not that she was involved in the booking, but she prepared the taxes. And then he highlighted the previously admitted statements of Brett Parker in Governor's Exhibit 13. So I don't think he said in any way she was involved in the gambling business. In fact, the judge precluded us from sort of asking that question. Right, because that states the conclusion. Exactly, Your Honor. But I think that's important in evaluating what Mr. Staple's role was with respect to Ms. Parker. And I think it was limited. I'm sorry, I didn't mean to interrupt your answer, but I did want to ask you specifically, considering your evidence, considering the defendant's argument, who would you advance as being your strongest candidate for being the fifth person? I think that the strongest answer is, strongest candidate are the three layoff guys. And I put Mr. Benin-Haley at the top of that list. So actually, you may be in a worse boat for arguing that the wife, his record keeper, was the fifth person, because it introduces the element of uncertainty in the jury's mind about the value of Staple's testimony. Potentially, Your Honor. And in hindsight. Sure. I have to tell you, this is an interesting exercise of prosecutorial discretion. You have Brett Parker who's serving two consecutive life sentences in state prison for the murder of his wife and her lover and his former associate. We're not challenging the gambling conviction of the sentencing. The only thing we're talking about is whether we can get five people for a federal, for an element of conspiracy for a federal gambling statute. It really does seem like an awful lot of work to add on to the consequences that are facing these individuals who are already serving two consecutive life sentences. Your Honor, tobacco. That's sort of an, I'm sorry, I'm not even sure that's a question, but I'm articulating a concern. I think I understand the question, Your Honor. The investigation in the gambling business began well before Brett Parker was charged with the murder. It was part and parcel of an investigation that began at a time when there was no certainty of who killed Tammy Parker and Brian Kapp and hers or what the result would be on that issue. It's an investigation and prosecution that was begun for a host of reasons, but part of it is you have a murder investigation that reveals substantial evidence of bookkeeping in a community. While it is not big compared to Las Vegas, it is very big for Columbia, South Carolina standards. Respecting the difference between those two, in Columbia, South Carolina, this was a large-scale booking operation. On the day that he was picked up, Mr. Brett Parker had almost $5,000 in his pocket. He owed Brian Kapp and hers, one of the decedents, more than $16,000. He had accounts payable to him of more than $33,000. He had debts on a layoff account, the HAL account, of $76,000. I mean, these are not inconsequential sums of money that are involved. And so I think what Judge Curry did in a vagrant, and I hope that answers the question of why this case ended up being. I understand the posture and where you found yourself. Right. So what we have to do for our purposes is just find these five people. We have to find, basically, a fifth person. I think that's true. And I think the easiest, and I think the one that was the primary argument made below, were the layoff bookings. And this is the Jenkins decision. I think also it's important to note that the jury instructions in the trial court below, which are not challenged, mirror the Jenkins decision. If you're agreeing that it could well have been Tammy as the fifth person. Is it a possibility? Because I was not in the jury room. So I certainly, there's no way for any of us to know. So doesn't that undercut your argument that the Brady violation was not material? I don't think so. Because I think what this court has done in a variety of cases, like McLean, I believe most recently, is not a determination of whether it could possibly have had an impact. Because at some level, that is always the case. I mean, it could possibly have an impact. It's simply not the standard. It's whether there's a reasonable probability. And we think Judge Curry here, having sat through the entire trial, being intimately familiar with what did occur, the importance of Mr. Staples, that he was really irrelevant in the most significant part with respect to the layoff betting. The exhibits that he offered with respect to that, Governor's Exhibit 13, had already been admitted when he testified. And then with respect to Tammy Parker, I think the appellant overstates his role in that context too. He identified her handwriting on the notes, but didn't explain what the notes meant. And that was really corroborated in significant part by the testimony of Hal Saxby, who described delivering envelopes to her of gambling money that was owed. But he didn't say to her, did he testify that he was saying that these were gambling proceeds and he handed them over? He did not. Probably one might infer that receiving envelopes full of money might raise one's suspicions. I certainly think, taking the evidence in the light most favorable to the government, Tammy Parker was well aware of what Brett Parker did. Okay, on the sufficiency, you've got a very strong argument on the sufficiency. The one other thing that I think is important, though, to illustrate that Mr. Staples is not the only, or even the essential witness with respect to Ms. Parker, is I believe it's Joint Appendix 450. On Tammy Parker's desk in her office was an envelope that said booking fund $20,000 on it. That alone, I think, reflects her involvement on her desk. When was that found? It was found when law enforcement showed up the day after her murder. So she was dead when it was found. We don't know who put it there. It is true that we do not know who put it there, but several people testified that that was her desk, that she was the one that used that desk, and that Brett Parker used the separate desk where the phone lines were. So I think they're certainly taking the evidence in the light most favorable to the government. There was a strong suggestion that that was evidence of her involvement. For sufficiency. For sufficiency purposes. But not for materiality. You don't look at it in the light most favorable to the government. I think that's true, but I think in evaluating how important Mr. Staples was with respect to Tammy Parker, and I don't think he was important at all with respect to the layoffs, but with respect to Tammy Parker, I think there is other evidence in the record that supports the idea that she conducted the business. She was part and parcel. It's interesting, though, and somewhat unusual in that to the extent that you bolster the sufficiency argument, you simultaneously undercut your materiality argument, because the more likely it is that she could have been the fifth, the more likely it is that Staples' testimony could have been material. I don't think so, because I think what this court has said, and I believe said it in the BART code decision, indicated that really where we're talking about impeachment evidence, we find a material where it's the only evidence or it's the essential evidence that ties the defendant to the crime. BART code doesn't say it has to be? No, it does not say that it has to be. Exactly. I certainly did not want to suggest that it has to be, but it certainly suggested that that was the circumstance in which we were most likely, I think would be the fair reading of it, that it's the most likely scenario where it's essential. Do you want to point to the part of the opinion that says that? I'd be happy to if you'd hand me the BART code decision. I think, and I believe, in particular- The strength of the other evidence certainly is relevant, but I'd be interested to see where BART code suggests it has to be the only evidence. Sure, page 339, it begins, In general evidence, and I'm quoting, Evidence whose function is impeachment may be considered material where the witness in question supplied the only evidence linking the defendant to the crime. It then goes on to say, similarly, Impeaching evidence to be material where the defendant supplied the only evidence of an essential element. I think that's where I'm drawing the suggestion. Now, why wasn't the fact that she filled out tax records involving gambling proceeds an essential element of her knowledge, given the fact that the other information you seized occurred after she was dead? This was evidence of what she did while she was alive. Now, you do have her taking the envelopes at the door, but this is pretty significant in her own handwriting, as identified by Staples, that she really knew what was going on and was looking out for the operation by making sure that the taxes were done properly. But I think what's important in that context is Mr. Staples' credibility in identifying her handwriting. There was no question that this was her handwriting. Nobody disputed that issue. There would surely have been other individuals who could have authenticated her handwriting. Was there any dispute about the handwriting on the envelope? There was no dispute raised about the authenticity or miscibility of that envelope. So I do think in evaluating the importance of Staples in that context, I think you do look at the entirety of it. But I think that, Judge Duncan, your question very early on to Mr. Kendrick is sort of most critical to this. And I think looking at what is the most likely scenario, based on the questions and trying to divine what happened in the jury, is that this is a layoff case. Doesn't it come down, and I'm wondering, Mr. Richardson, and I don't know the answer to this, but my concern is the credibility of our criminal justice system and the people not get put away when the rules have been violated. And, you know, when it's close and we're arguing and nobody knows, why doesn't the defendant get the benefits? Why isn't there a reasonable probability? If you can't put it over the 40-yard line, if they can't put it over their 40 yards, I mean, I'm not good at sports analogies except baseball. That's fine. We had one recently talk about the 101-yard line. Okay, no, I'm not that bad. You know, if we're all kind of in a swirl over this, why doesn't the integrity of the process demand that we say this is something? You can try them again. There's nothing to stop you from trying again and doing it the right way. I think the reason for that is twofold. One, that the Supreme Court has set up the standards of materiality, and I think it's to be applied. There's a time where there's a question of when it was to be applied. Maybe there was going to be some differences. I think by the time we get to Cosby-Whitley, it's applied across the board. The materiality standard is the same whether it's requested or not requested, whether it is impeachment or not impeachment. So I think that standard applies. And I think the Supreme Court has also been very clear that the burden on the issue of establishing it actually lies with the defendant. I certainly understand your concern, and we certainly want to protect the integrity of the system as well. It's one that we strive to do the best we can in the search for justice that we can. There's no doubt about that. We take the job very seriously, and we wish we were not here before you. But I think in evaluating the question of materiality, I don't think the standard violates or changes based on good faith or bad faith, the type of evidence, the scenario it was in. I think what it evaluates is, as Judge Curry did, whether or not there is a reasonable probability that the result would have been different. I see that I'm well over my time, unless there are further questions from the panel. I think we're fine. Thank you very much. Thank you, Your Honor. Mr. Kendrick, you reserve some time for rebuttal. Mr. Kendrick, how do we possibly determine whether there's a reasonable probability that one of those jurors picked Tammy as the person? It's kind of thorny, isn't it? It is, and I think you're looking at too specific of a question when you ask that. I think you were trying to say, could this, did this one thing happen? Yes, it could have. And the reasonable probability that answers sort of what you were just saying, does it undermine our confidence in the result? And that's what ties the practical result to the philosophical questions we're asking about the integrity of our court system. I think, in fact, we do get the benefit of the doubt here, because the standard of reasonable probability, they define that. So when we say reasonable probability, they then define it as something that undermines your confidence in the outcome of this case. No one would rather or less be here arguing against my local United States Attorney's Office on a Brady violation like this. But in a much more uncomfortable position, there's only one entity that can do anything about this problem, and that is this court. Let's talk about when we started this problem, which is not an isolated thing. The Bartco case showed utter frustration, but let's talk about Gregory Bartco, securities fraud lawyer. Let's talk about Jack Parker and Doug Taylor, who, regardless of what the government says, are small-time local bookies taking some sports bets on a Saturday morning. Let's talk about the difference. In Bartco, your problem was, I am, we have the court as a body is angry at what has happened here. But there are reams and reams of evidence against Mr. Bartco. I read the 100-page district court opinion the other day, and it is a mountain of evidence. Combine that with the fact that his lawyer from Atlanta, who is a very fine attorney, utterly destroyed these witnesses on cross-examination. So at the end of the day, are you accomplishing anything by reversing that conviction? I don't think it's fair for me to give you that answer, but I'll talk about my own case, where there are not mountains of evidence. The layoff is the strongest argument the government had, and it's the biggest hurdle I would clear in a sufficiency of the evidence argument. But I think that you can look at United States v. George, Gresco, and Jenkins, the three gambling cases that occur about three years apart in the Fourth Circuit from 1978 to 1980, where the opportunity to layoff is not enough. Most of the evidence in this case was an opportunity to layoff, and this court has said that doesn't get you there. Then you've got the HAL account, where the affirmative evidence describing the HAL account is from Mr. Harry Beninhaley, who, when I ask him the questions, or when we point out his testimony, and we lay it out more specifically in the brief, is saying one thing, but offering proof of another. He is saying, oh yeah, that was a layoff bet. It wasn't consistent with a layoff bet. That's not reasonable to infer that in the light most favorable to government. So we have Tammy Parker, who's maybe a fifth person, again, because we have to string together a group of organizations. This isn't large-scale gambling, because there's three different groups here. We have to string them together. Well, actually, we're just struggling to find a fifth for our purposes. And again, I mean, think about the fact that Congress, and we cite this in our brief, says that you really should never be confronted with this position, because the legislative history of this statute says that it's probably not ever going to hit a minimal thing. You're going to end up with 10, 15, 20. We're never going to really be struggling to find a fifth. But compare that to what Mr. Barkow did. Compare that to the mountains of evidence against Mr. Barkow. And let's talk about the confidence we have. This isn't fun. I mean, these are horrible issues to argue amongst your colleagues. But it has to change. When are we going to be okay with hiding evidence? I don't want to call my colleagues. I don't want to say hiding. I want to use the words like nondisclosure and omission. But that's not what it was. The email that I sent to the U.S. Attorney's Office. I would feel a lot better, though, if you would just say that the evidence was not provided, because I don't think you need to speak in terms of hiding. Then, Your Honor, it wasn't provided. It was known to the government, and there was a decision not to give it to us. Under what circumstances does that not cause us confidence questions? And I can tell you under what circumstances it does, because this court has done it. Under Mr. Barkow's circumstances. But not under Mr. Parker and Mr. Taylor's circumstances. When we sit in this courtroom and we struggle to find a fifth person to get us to the bare minimum of prosecution, and we have a witness who got a fifth person into this case, how is that not material? By not giving us that information, by taking that decision away from me, as a trial lawyer, taking the decision to use this information away from Judge Curry, as a trial judge, how does that not leave us with a problem involving the confidence of this case? At what point is it okay to not turn this evidence over? Is it okay to say, well, we're going to win, so we don't have to turn the evidence over? The disadvantage we're left with when we're arguing about it and looking at it backwards is that there's that bias. There's that bias of a jury verdict to say, well, you know, they could have won. So could we have. There was a critical piece of evidence not given to us. We had nothing to impeach this man with. The government mentions the affair. I'm not concerned with his romantic life. I'm concerned with his motivation. The currency of our justice system right now is cooperation by the accused. Mr. Staples, maybe not typical, is accused by the federal government of criminal activity, and he is at the same time cooperating. There is no stronger impeachment than that. You pointed it out perfectly, Your Honor, when you talk about the trial and the nuances of the courtroom when the government puts up a witness who they are investigating. Forget about being a fraudster. I think that's important, but I think it raises a whole set of issues that I probably can't get out in 40 seconds. But just assume the fact that this very government that he is testifying on behalf of is also leveling its coercive power right at him. What a powerful thing to have in your back pocket. Remember when I was your star witness in the gambling case? That the government considers big. So, again, this is what I want to leave you with. The reasonable probability is defined by does it undermine your confidence. This is not the mountains of evidence. This is not a 25-year fraud sentence. This is a case where we barely hit the minimum reflected by the sentences. One probation and one five months. This is a small case and there were no mountains of evidence. This is the case to set the standard in the Fourth Circuit to say we will not, under any circumstances, tolerate this. Otherwise, there's no remedy at all. If there are no questions, we're done. Thank you, Your Honors. Thank you. We will greet counsel and we will take questions and answers from the students. I'll ask the court to adjourn. All rise. Thank you. Good Lord. I don't understand what he's saying. The dishonorable court stands adjourned. Senator Dias of the United States in dishonorable court. Thank you.
judges: Allyson K. Duncan, Barbara Milano Keenan, Stephanie D. Thacker